UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. SA CV 11-0704 DOC (ANx)             Date: November 14, 2011

Title: FEDERAL DEPOSIT INSURANCE CORPORATION v. CORELOGIC VALUATION SERVICES, LLC, F/K/A EAPPRAISALIT, LLC; CORELOGIC, INC., F/K/A THE FIRST AMERICAN CORPORATION; THE FIRST AMERICAN FINANCIAL CORPORATION; CORELOGIC REAL ESTATE SOLUTIONS, LLC, F/K/A FIRST AMERICAN REAL ESTATE SOLUTIONS, LLC; AND CORELOGIC REAL ESTATE INFORMATION SERVICES, LLC, F/K/A FIRST AMERICAN REAL ESTATE INFORMATION SERVICES, LLC

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

       Before the Court is a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") (Docket 28) in the above-captioned case filed by CoreLogic Valuation Services, LLC, f/k/a eAppraisalIT, LLC ("EA"); CoreLogic, Inc., f/k/a The First American Corporation ("CoreLogic"); The First American Financial Corporation ("First American Financial"); CoreLogic Real Estate Solutions, LLC, f/k/a First American Real Estate Solutions, LLC ("First American Solutions"); and CoreLogic Real Estate Information Services, LLC, f/k/a First American Real Estate Information Services, LLC ("First American Information Services") (collectively, "Defendants"). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing and replying papers[1], and for the reasons discussed below, the Court hereby GRANTS in part and DENIES in part the Motion to Dismiss.

    **I.**     **BACKGROUND**

---

[1] The Court DENIES Plaintiff's Motion for Leave to File Sur-Reply as Defendants did not raise any new arguments in their reply brief.

The Federal Deposit Insurance Corporation ("FDIC" or "Plaintiff"), as Receiver of Washington Mutual Bank ("WaMu"), brings this action based on an Appraisal Outsourcing Services Agreement ("EA Agreement") entered into by WaMu and EA on November 1, 2006. Complaint, ¶ 2; Exhibit "A." Pursuant to the EA Agreement, EA was to provide appraisal services that it represented and warranted would conform to federal and state law, regulatory guidelines, and all applicable industry standards, including the Uniform Standards of Professional Appraisal Practice ("USPAP").[2] *Id*. EA also agreed to insure the competency and qualifications of its appraisers and to conduct a meaningful quality control review of the appraisals. *Id*. Further, First American Solutions entered into a Performance Guaranty Agreement on November 14, 2006 ("Guaranty Agreement"). *Id*. at ¶ 4; Exhibit "B." Pursuant to the Guaranty Agreement, First American Solutions agreed, unconditionally and irrevocably, to guarantee "all obligations" undertaken by EA under the EA Agreement. *Id*. at ¶ 52.

Plaintiff alleges that, despite the representations and promises EA made to WaMu, at least 194 of EA's appraisal services failed to comply with federal and state law, regulatory guidelines, and the USPAP. *Id*. at ¶ 3. Specifically, Plaintiff avers that: (1) EA used appraisers who lacked the skill, experience, and qualifications necessary to perform the appraisals; (2) EA's "quality control" of the appraisals was severely inadequate; and (3) to date, out of 259 appraisals that the FDIC and its experts have allegedly reviewed, more than 75 percent were found to have multiple egregious violations of the USPAP and applicable industry standards. *Id*. at ¶¶ 3, 31. As a result, Plaintiff claims that EA delivered appraisals that were prepared in a grossly negligent manner and that contained substantially inflated appraisal values. *Id*. at ¶ 3. But for the inflated appraisals provided by EA, Plaintiff alleges that WaMu

---

[2] The USPAP is formulated by the Appraisal Standards Board of the Appraisal Foundation, who "develops, publishes, interprets, and amends USPAP on behalf of appraisers and users of appraisal services." The USPAP includes the following standards, among others:

1.  Ethics

    - an appraiser must perform assignments ethically and competently, in accordance with USPAP and any supplemental standards agreed to by the appraiser in accepting the assignment.

2.  Standards Rule 1-1. The appraiser must not render appraisal services in a careless or negligent manner . . . .

5.  Standards Rule 3-1 (d)-(g). In developing an appraisal review, the reviewer must develop an opinion as to the completeness of the material under review, develop an opinion as to the apparent adequacy and relevance of the data [. . .], develop an opinion as to the appropriateness of the appraisal methods and techniques used [. . .]; and develop an opinion as to whether the analyses, opinions, and conclusions are appropriate and reasonable . . . .

would not have made the residential mortgage loans at issue and would not have suffered losses on those loans. *Id.*

As to CoreLogic; First American Financial; First American Solutions; and First American Information Services, Plaintiff alleges that they controlled or directed EA's actions and, as such, are directly liable for the damages resulting from the grossly negligent appraisal services EA provided. *Id.* at ¶ 4. Plaintiff claims that, during the 18 month period in which EA provided the appraisal services at issue, EA's ultimate parent company was The First American Corporation ("First American"). *Id* at ¶ 36. First American owned First American Information Services which, in turn, formed a joint venture with Experian Information Solutions, Inc. ("Experian"), called First American Solutions. *Id.* On June 1, 2010, First American divided into two publicly traded companies – CoreLogic and First American Financial. *Id.* CoreLogic is the new name of the entity formally known as First American and continues to own First American Information Services. *Id.* Therefore, CoreLogic remains EA's ultimate parent. *Id.* Accordingly, Plaintiff alleges that there was such a unity of interest and ownership among these entitles that the separateness of the entities ceased to exist with regard to the appraisal services provided by EA to WaMu. *Id.* at ¶ 38. Plaintiff further claims that treating the grossly negligence appraisal services provided by EA to WaMu as acts of EA alone would cause an inequitable result. *Id.*

On May 9, 2011, a copy of the Complaint was filed in this Court (Docket 1), alleging four causes of action: (1) gross negligence against all defendants; (2) breach of contract against EA; (3) breach of contract against First American Solutions; and (4) alter ego, single business enterprise, joint venture against CoreLogic, First American Information Services, and First American Solutions. On August 1, 2011, Moving Defendants brought the instant Motion to Dismiss under Fed. R. Civ. P. 12(b).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the

complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.   DISCUSSION

#### 1.   First Claim: Gross Negligence Against All Defendants

Plaintiff avers that Defendants breached their duties and were grossly negligent because Defendants failed to provide WaMu with appraisals that were prepared with such skill, prudence, and diligence as other appraisers commonly possess and exercise. Cmpl. at ¶ 43. Plaintiff claims that Defendants were also grossly negligent because they failed to provide appraisals that complied with USPAP and other applicable state and federal statutes and regulations, as well as standards applicable to the appraisal industry. *Id*. Defendants argue that Plaintiff's gross negligence claim fails because: (1) it is barred by the economic loss doctrine; (2) recklessness has not been plausibly alleged; and (3) causation has not been plausibly alleged. Motion to Dismiss, 13. As the Court finds that Plaintiff's gross negligence claim is barred by the economic loss rule, the Court concludes that any further discussion regarding recklessness and causation is unnecessary.

Defendants argue that Plaintiff's gross negligence claim is barred by the economic loss rule. Motion to Dismiss, 13. The parties disagree about whether California or New York applies to this claim, so the Court must first decide which state's substantive law applies. *See* Motion to Dismiss, 13; Opposition to Defendants' Motion to Dismiss the Complaint (Docket 31) ("Opposition"), 5. As the Supreme Court instructed in *O'Melveny & Myers v. FDIC*, the choice-of-law principles of the forum state apply rather than federal common law principles. 512 U.S. 79, 84-85 (1994). As such, California's choice of law rules govern whether California or New York's law should apply. California courts employ a three-part "governmental interest analysis" to determine whether to apply California law or the law of a non-forum state. *Havlicek v. Coast-to-Coast Analytical Servs., Inc.*, 39 Cal. App. 4th 1844, 1851 (1995) (applying the three-step analysis to determine whether California or Delaware substantive law applied). Under this analysis, the court first determines whether the two concerned states have different laws. *Id*. Second, the court considers whether each state has an interest in having its law

applied to the case. *Id.* Third, if the laws are different and each state has an interest in having its own law applied, the court applies the law of the state whose interest would be more impaired if its policy were subordinated to the policy of the other state. *Id.*

Here, the choice of law inquiry ends at step one of the governmental inquiry analysis, as Defendants have conceded the substantial similarity of California and New York law with respect to the elements of gross negligence and application of the economic loss rule. *See* Motion to Dismiss, 14-15. Therefore, the Court will proceed under California law. *See, e.g, Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314, 327 (Cal. Ct. App. 1972) (noting the forum state's interest in applying its own law "will be displaced only if there is a compelling reason for doing so").

In California, the economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for breaches of duties that merely restate contractual obligations"). The rule "prevents the law of contract and the law of tort from dissolving into one another." *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 988 (2004). By preventing tort claims, the rule encourages parties to reach a mutually beneficial private bargain. *United Guar. Mort. Indem. Co. v. Countrywide Fin. Corp.,* 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). As such, the economic loss rule is particularly strong when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal. 4th at 991.

California's economic loss rule has two broad categories of exceptions. *United Guaranty*, 660 F. Supp. 2d at 1180. The first category applies to product liability cases, which is inapplicable in the present case. *Id.* The second category applies to breaches of a noncontractual duty. *Id.* at ¶ 1181. California courts have found exceptions to the economic loss rule in the noncontractual duty category where the conduct alleged also: (1) breaches a duty imposed by some type of "special" or "confidential" relationship; (2) breaches a "duty" not to commit certain intentional torts; or (3) was committed "intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* These exceptions require the breach of a tort duty apart from the general duty not to act negligently. *Robinson Helicopter*, 34 Cal. 4th at 988. Indeed, "[i]f every negligent breach of a contract [gave] rise to tort damages, the [rule] would be meaningless, as would the statutory distinction between tort and contract remedies." *Id.* at 990 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 553-554 (1999)). The California Supreme Court emphasizes that courts should focus on intentional conduct when considering whether to apply an exception to the economic loss rule. *Id.*

First, Plaintiff alleges that its gross negligence claim falls within an exception to the economic loss rule, as EA breached an independent tort duty. *See* Opposition, 15. This exception does not fit neatly into any of the *United Guaranty* categories. Rather, Plaintiff appears to be generally alleging that a noncontractual duty existed by virtue of the alleged independent tort duties EA owed to WaMu. However, the economic loss rule prevents the law of contract and the law of tort from dissolving into one another. *Robinson Helicopter Co.,* 34 Cal. 4th at 988. Therefore, a person may not

ordinarily recover in tort for breaches of duties that "merely restate contractual obligations." *Aas*, 24 Cal. 4th at 643.

The case of *Erlich* is instructive. There, plaintiff homeowners contracted with defendant general contractor to build their "dream house." 21 Cal. 4th at 548. After plaintiffs moved in, it rained and the house had severe leaks. *Id*. When the home was later inspected by another general contractor, plaintiffs discovered that the home was structurally unsound. *Id*. at 549. One of the plaintiffs suffered severe emotional distress and developed a permanent heart condition. *Id*. Plaintiffs sought recovery on several theories, including breach of contract and negligent construction. *Id*. The court held that defendant's negligence directly caused only economic injury and breached no duty independent of the contract and, therefore, plaintiffs were only entitled to contract damages. *Id*. at 554.

Here, Plaintiff avers that EA is liable for negligence because it failed to meet California's independent common law duties for professionals and service providers. Opposition, 7. The standard of care owed by an appraiser to a client is embodied in USPAP, applicable federal and state standards and regulations, and applicable industry standards. Cmpl. at ¶ 24. However, like *Erlich*, where defendant's negligence caused only economic injury and breached no duty independent of the contract, EA's alleged negligence caused only economic injury and EA has failed to allege a sufficient duty independent of the contract. A person may not ordinarily recover in tort for breaches of duties that "merely restate contractual obligations."*Aas,* 24 Cal. 4th at 643. Pursuant to the EA Agreement, EA represented and warranted that every appraisal service it provided would conform to federal and state law, regulatory guidelines, and all applicable industry standards, including the USPAP. As such, the additional allegations pertaining to EA's alleged common law duties "merely restate contractual obligations." *See* Cmpl. at ¶ 2. Therefore, as Plaintiff has not alleged an independent duty apart from the contract, Plaintiff has failed to show that the economic loss rule is not applicable in this situation. *Aas*, 24 Cal. 4th at 643.

Second, Plaintiff claims that the special relationship exception to the economic loss rule applies in the present case. Opposition, 16. However, courts have rejected the argument that professionals have a special relationship with contracting parties. For example, in *Erlich*, the court rejected the argument that a licensed general contractor, who had negligently constructed a house, had a special relationship with the plaintiff homeowners such that the contractor could be liable for negligent breach of contract. 21 Cal. 4th at 543. The court noted that defendant contractor was among thousands of contractors who provided the same services, and that plaintiffs had their choice among contractors willing to accept work in the area where their house was to be constructed. *Id*. at 553. Moreover, although plaintiffs "undoubtedly" relied on defendant's claimed expertise, plaintiffs were in a position to view and criticize defendant's work or to hire someone else. *Id*.

Here, Plaintiff avers that there was a special relationship between EA and WaMu as an appraiser and client. Opposition, 16. Plaintiff claims that when EA undertook the duty to provide WaMu with a high volume of accurate and USPAP compliant appraisals, it entered into a special

relationship. *Id*. However, like *Erlich*, where the court rejected the argument that a licensed general contractor had a special relationship with plaintiff homeowners, Plaintiff has failed to adequately allege a special relationship. As in *Erlich*, where plaintiffs could choose among contractors, Plaintiff could choose from a variety of appraisers. Moreover, Plaintiff was free to criticize EA's work or hire someone else. Therefore, Plaintiff has failed to allege a special relationship. Instead, a mere contractual relationship exists between EA and WaMu.

As the duties alleged by Plaintiff "merely restate contractual obligations," and Plaintiff has failed to sufficiently allege a "special relationship," Plaintiff is precluded under the economic loss rule from bringing suit for gross negligence. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Gross Negligence is GRANTED.

### 2. Second Claim: Breach of Contract Against EA

Plaintiff avers that EA breached the EA Agreement, which contains a New York choice of law clause, because EA provided WaMu with appraisals that were not prepared by appropriately licensed or certified appraisers and that did not comply with the USPAP, applicable state and federal statutes and regulations, and other standards applicable to the appraisal industry. Cmpl. at ¶ 49. Plaintiff further claims that EA failed to indemnify WaMu for losses incurred by WaMu relating to the inadequacy of EA's services. *Id*. The essential elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) that defendants breached the contract; and (4) that plaintiffs were damaged. *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

Defendants argue that Plaintiff's breach of contract claim against EA fails because Plaintiff has not properly alleged performance, breach, or causation. Motion to Dismiss, 5. Accordingly, the sufficiency of these elements will be addressed, in turn, below.

#### A. Performance

Defendants argue that Plaintiff has failed to properly allege performance under the contract, as Plaintiff has not pled facts showing compliance with all conditions precedent under the contract. Motion to Dismiss, 5-6. Defendants claim that, to the extent that the appraisal services were alleged to be improperly performed, the EA Agreement contains a mandatory mechanism for redress, the Appraisal Warranty. *Id*. The Appraisal Warranty, included as Exhibit B of the EA Agreement, allegedly provides that, before any recovery can be obtained for faulty appraisal services, several conditions must first be satisfied. *Id*. Such conditions include providing express written notice of the claimed breach. *Id*.

Plaintiff claims that the conditions precedent that form the basis of Defendants' argument apply only to claims specifically alleging breach of the Appraisal Warranty itself. Opposition, 17. Plaintiff avers that its breach of contract claim against EA is not based on the Appraisal Warranty but rather Exhibit A of the EA Agreement, which provides separate obligations and duties distinct from the

Appraisal Warranty. *Id*. Essentially, Plaintiff argues that Defendants' alleged conditions precedent do not apply to breach of contract claims based on Exhibit A. *Id*. at ¶ 18.

An examination of the Appraisal Warranty reveals that the conditions precedent "must be met with respect to any claim for a breach of this Appraisal Warranty." Cmpl. at Exhibit B. If the parties had intended the conditions precedent to apply to the entire agreement, they could have clearly said so. Therefore, the Court finds Plaintiff's interpretation plausible, as Plaintiff's claim is only for breach of various sections of Exhibit A of the EA Agreement. At the Rule 12(b)(6) stage, plausibility is all that is required. *Iqbal*, 129 S.Ct. at 1950. Whether Plaintiff's interpretation is correct is for a later stage of litigation. Accordingly, Plaintiff has adequately alleged performance.

### B.     Breach

Defendants next allege that Plaintiff's breach of contract claims should be dismissed because they are lacking factual support in the Complaint. Motion to Dismiss, 11. Plaintiff avers that EA failed to comply with sections 2.1(a)-(d), 4.3, 4.4, 7.1(j), 15.2(a) & (l), Exhibit A, and Exhibit A-1 (2) of the EA Agreement. Cmpl. at ¶ 48. Although Defendants' Motion to Dismiss is not entirely clear, it appears that Defendants move to dismiss only Plaintiff's breach of contract claims under sections 2.1 (b)-(c), 4.4, 7.1(j), and 15.2(l). Motion to Dismiss, 12.

A review of the sections at issue shows that Plaintiff has alleged a plausible claim for relief with respect to sections 4.4, 7.1(j), and 15.2(l). First, section 4.4 holds EA responsible for a subcontractor's compliance with the EA Agreement. Cmpl. at Exhibit A. The Complaint details how "compliance" with the Agreement includes EA being "responsible and liable" for the appraisers' conformity to certain standards such as the USPAP. *See* Cmpl. at ¶¶ 2, 16, 17, 18, 21. Further, it includes allegations that EA's quality control process was inadequate on its face and that EA's appraisal services did not comply with the USPAP or other standards in the Agreement. *Id*. at ¶¶ 27-32. Second, section 7.1(j) states that EA will indemnify WaMu for losses arising out of claims by WaMu relating to the inadequacy of services, and the Complaint includes allegations of losses relating to EA's inadequacy of services. *Id*. at ¶¶ 3, 31, 55. Lastly, EA warranted under section 15.2(l) that EA would perform the services in accordance with applicable professional standards in the appraisal management industry. *Id*. at ¶ 49. Plaintiff alleged that EA failed to provide WaMu with appraisals that complied with USPAP and other applicable state and federal statutes and regulations. *Id*. Therefore, Plaintiff has stated sufficient facts to plead breach of contract for each of these sections.

However, Plaintiff has not alleged a plausible claim for relief with respect to sections 2.1(b)-(c). Sections 2.1(b) and 2.1(c) pertain to services set out in "New Service Schedules" and also "Project services." Cmpl. at Exhibit A. The Complaint does not appear to include any allegations regarding purported breaches of section 2.1(b) or 2.1(c). As such, there are not sufficient facts to state a claim for relief for breach of contract under sections 2.1(b)-(c).

Accordingly, Plaintiff has alleged a plausible claim for relief for breach of sections 4.4, 7.1(j), and 15.2(l), but not sections 2.1(b)-(c).

### C.     Causation

Finally, Defendants claim that Plaintiff has not adequately alleged causation because (1)

Plaintiff's allegations are conclusory and (2) Plaintiff's assertions are contradicted by its admissions in another pending case. Motion to Dismiss, 8. Causation is an essential element of damages in a breach of contract action. *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). A plaintiff must prove that a defendant's breach directly and proximately caused his or her damages. *Id*.

First, the Court finds that Plaintiff's allegations are not conclusory. Plaintiff alleged that WaMu relied on EA's appraisal services, EA knew that WaMu relied on the appraisal services, and that WaMu would not have made the loans but for the inflated appraisals provided or approved by EA. Cmpl. at ¶ 31. Plaintiff further claimed that 194 of the 259 appraisals provided or approved by EA were found to have multiple egregious violations of the USPAP and applicable industry standards. *Id*. Finally, Plaintiff averred that, as a result of Defendants' breaches of the EA Agreement, WaMu suffered damages. *Id* at ¶ 50. These assertions suffice to plausibly allege causation.

Second, Plaintiff's assertions in another pending lawsuit do not disprove the allegations of causation. The Ninth Circuit has held that allegations in one case are not binding judicial admissions in a different case. *See Am. Passage Media Corp. v. Cass Comm'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1995) (holding that allegations from a complaint filed in one action were "admissible but not conclusive admissions" in a second action). Moreover, while a court may take judicial notice of the existence of complaints in other actions, "the Court may not, however, accept any of the allegations of these complaints as true." *Metro. Creditors Trust v. PriceWaterhouseCoopers, LLP,* 463 F. Supp. 2d 1193, 1198 (E.D. Wash. 2006). For example, in *Metro. Creditors*, the court noted that it could take judicial notice of the fact that the SEC had filed a criminal complaint against one of the parties involved in the lawsuit, but that it could not accept any of the allegations in the complaint as true. *Id*. The Court will similarly refuse to hold Plaintiff's allegations in another case against them here, especially at the motion to dismiss stage.[3]

Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract against EA is GRANTED with respect to sections 2.1(b)-(c), but DENIED with respect to sections 4.4, 7.1(j), and 15.2(l).

### 3. Third Claim: Breach of Contract Against First American Solutions

Plaintiff next claims that First American Solutions breached the Guaranty Agreement it entered into with WaMu by failing to compensate WaMu or the FDIC for the damages caused by EA's breach of the EA Agreement. Cmpl. at ¶ 54. The parties do not dispute that a breach of contract claim has been adequately alleged here. The only issue before the Court is whether the claim must be dismissed under Rule 12(b) because Plaintiff has not fulfilled an alleged condition precedent before filing suit against First American Solutions. Motion to Dismiss, 21; Opposition, 21. Section 3 of the

---

[3]As the Court will not be taking any of the allegations in the Complaints filed in *Federal Deposit Insurance Corp. v. Killinger, et al.,* No. 2:11-cv-00459 (W.D. Wash.) (filed Mar. 16, 2011) or *McClelland v. Grubb & Ellis Consulting Servs. Co., et al.* (N.Y. Sup. Ct.) (filed Nov. 28, 2006) as true, the Court DENIES as MOOT Defendants' Request for Judicial Notice of those Complaints.

Guaranty Agreement states that "[WaMu] shall be required to first pursue remedies against [EA] before involving the benefits of this Performance Guaranty Agreement." Cmpl. at Exhibit B.

Plaintiff avers that the language does not on its face require the exhaustion of remedies. Opposition, 21. Rather, Plaintiff claims that the language merely requires the FDIC to pursue remedies against EA, which the FDIC has allegedly done by demanding payment from EA. *Id*. at 22. Plaintiff's interpretation of the "first pursue remedies" condition is plausible on its face. As plausibility is all that is required, Plaintiff is not precluded from bringing a breach of contract claim against First American Solutions for failing to "first pursue remedies" against EA. *Iqbal*, 129 S.Ct. at 1950. Whether Plaintiff's interpretation is correct is for a later stage of litigation. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract against First American Solutions is DENIED.

### 4. Fourth Claim: Alter Ego, Single Business Enterprise, and Joint Venture Against CoreLogic, First American Information Services, and First American Solutions

Plaintiff alleges that CoreLogic, First American Information Services, and First American Solutions should be held jointly and severally liable for the wrongful acts of EA under the Alter Ego Doctrine, the Single Enterprise Doctrine, and the Joint Venture Doctrine. Cmpl. at ¶¶ 58, 60. Plaintiff does not oppose Defendants' argument that the Single Business Enterprise allegations fail as a matter of law. *See* Opposition, 24. Therefore, the Court will only address the Alter Ego Doctrine and the Joint Venture Doctrine.

In determining whether alter ego liability applies, a federal court applies the law of the forum state. *Schwarzkopf v. Brimes*, 626 F.3d 1032, 1037 (9th Cir. 2010) (applying California alter ego law in a federal bankruptcy case). California law recognizes alter ego liability when there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased to exist. *Id*. at 1038. Further, the adherence to the fiction of the separate existence of the corporation must result in the sanctioning of fraud or promotion of injustice. *Id*. Factors suggesting an alter ego relationship include the commingling of funds and other assets, the failure to segregate funds of separate entities, the disregard of legal formalities, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another. *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838-40 (1962).

For example, in *Leek v. Cooper*, plaintiff employees attempted to plead alter ego liability with respect to defendant shareholder of a corporation. 194 Cal. App. 4th 399, 414 (2011). Plaintiffs alleged that defendant shareholder was employed by defendant corporation, was the sole owner of the corporation, and that all acts alleged were authorized or ratified by defendant shareholder. *Id*. at 415. The court found that plaintiffs' allegations failed to sufficiently allege alter ego liability because the facts alleged did not show a unity of interest and inequitable result from treatment of the corporation as a sole actor. *Id*.

Here, too, Plaintiff fails to adequately allege alter ego liability. Plaintiff avers in conclusory language that CoreLogic, First American Information Services, and First American Solutions directed and controlled EA's actions with regard to the appraisal services provided by EA to

WaMu. Cmpl. at ¶ 57. Plaintiff further claims in conclusory language that there was such a unity of interest and ownership among these entities that the separateness of the entities ceased to exist with regard to the appraisal services provided by EA to WaMu and that treating the grossly negligent appraisals provided by EA to WaMu as EA's acts alone would cause an inequitable result. *Id*. The facts alleged in support of this claim are that EA's president testified that he: (1) had to obtain authorization from senior management at First American to take any substantive action with respect to the appraisal services provided by EA; (2) the current President of CoreLogic was his "boss." *Id*. at ¶ 39. These allegations are insufficient, as Plaintiff does not allege enough facts showing a unity of interest or that an inequitable result would result from treatment of the corporation as a sole actor. Like *Leek*, where plaintiff did not allege facts showing an inequitable result, Plaintiff completely fails to allege facts showing how treating the allegedly negligent appraisals provided by EA to WaMu as EA's acts alone would cause an inequitable result. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950.

As to Plaintiff's claim of "joint venture," Plaintiff has failed to sufficiently allege that a joint venture existed between EA and CoreLogic, First American Information Services, and First American Solutions. The term "joint venture" usually connotes a commercial objective. *County of Riverside v. Loma Linda University*, 118 Cal. App. 3d 300, 312 (1981) (citing *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-507 (1957)). It exists where there is "an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Id*. Whether the parties to a contract have created a joint venture or some other relationship involving cooperative effort depends upon their actual intention, which must be determined in accordance with ordinary rules governing interpretation of contracts. *Id*. at 313.

Plaintiff avers that the direction and control asserted by CoreLogic, First American Information Services, and First American Solutions over EA constitutes a joint undertaking to accomplish a common commercial purpose and, as such, CoreLogic, First American Information Services, and First American Solutions should be held jointly and severally liable under the Joint Venture Doctrine. Cmpl. at ¶¶ 59-60. Plaintiff does not assert sufficient facts supporting this allegation. Plaintiff merely claims that many of EA's business practices and its relations with CoreLogic, First American Information Services, and First American Solutions establish that all of the Defendants were acting as a single business entity. Cmpl. at ¶37. Therefore, this claim must also fail, as mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Alter Ego, Single Business Enterprise, and Joint Venture against CoreLogic, First American Information Services, and First American Solutions is GRANTED.

## IV. DISPOSITION

In light of the foregoing, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

The Court GRANTS dismissal as to Plaintiff's gross negligence and alter ego, single business enterprise, and joint venture claims. The Court GRANTS dismissal as to Plaintiff's breach of contract claim with respect to sections 2.1(b)-(c). These claims are DISMISSED WITH LEAVE TO AMEND.

The Court DENIES dismissal as to Plaintiff's breach of contract claim against EA with respect to sections 4.4, 7.1(j), and 15.2(l). The Court DENIES dismissal as to Plaintiff's breach of contract claim against First American Solutions.

Plaintiff shall file any amended complaint by December 5, 2011.

The Clerk shall serve this minute order on all parties to the action.